## Burd's Executors *versus* Patterson.

1. Since the Act of 21st March, 1824, relative to the sale of unseated lands for taxes, the limitation of five years begins to run from the time of the delivery of the treasurer's deed to the purchaser, and not from the time when possession was taken in pursuance of it. See Sheik *v.* McElroy, 8 *Harris* 25.

2. In the case of a sale made in 1832, no ejectment by the owner having been brought within the period of five years from the delivery of the treasurer's deed: it was *Held*, that he was barred, though his agent had been informed by the county treasurer, before the sale, that the taxes on his lands had been paid.

3. Where either the purchaser or the owner of such lands must suffer, the loss *should* fall on the latter who neglected to pay his taxes.

4. Though no bond for the surplus was given at the time of the tax sale, but one was given within *two* years thereafter, the irregularity was cured by the lapse of the period prescribed by the statute without ejectment by the owner or other person claiming under him.

ERROR to the Common Pleas of *Jefferson county*.

This was an action of ejectment to September Term, 1851, by Eliza H. Burd and others, executors of the will of Edward S. Burd, *v.* John Patterson, James Wilson, and Ninean Cooper, to recover the possession of above 305 acres of land. The land was claimed under a lottery warrant No. 157, granted to Jonathan D. Sergeant, on the 17th May, 1785, for 300 acres, and a survey made in pursuance of said warrant on the 9th day of November, 1785, of 305¾, which survey was returned and accepted on the 25th August, 1786.

On the 5th day of October, 1787, a patent issued to Edward Burd, for this tract No. 157, called "Burd's Choice," the title of Jonathan D. Sergeant therein having become vested in the said Edward Burd.

On the 9th day of July, 1828, Edward Burd, by his deed of that date, conveyed to Edward Shippen Burd, which deed was acknowledged on the 19th July, 1828, thus vesting the legal title in Edward Shippen Burd.

On the 31st day of January, 1848, Edward Shippen Burd made his last will and testament, in which he constituted and appointed Eliza Howard Burd, Eli K. Price, and Joseph B. Townsend, the aforesaid plaintiffs, executors of his said last will and testament, with power to sell his lands in counties other than the county of Philadelphia, commonly called "Back lands," for the purpose of creating a fund in the hands of the said executors, to be applied towards the due execution of the said will, as and when the same might be found necessary and convenient. This will was proved before the register of the city and county of Philadelphia on the

[Burd's Executors *v.* Patterson.]

23d day of September, 1848; and on the 28th day of September, 1848, letters testamentary were granted to the executors.

The defendants relied upon an assessment and sale of this tract No. 157, for taxes for the year 1830 and 1831. In 1830, tract No. 157 was assessed in Ridgeway township as follows:

|  | | | Acres. | Val. | Tax. |
|---|---|---|---|---|---|
| 1830, No. 157, | Jonathan D. Sergeant, | | 305½ | 305.50 | $1.05½ |
| 1831, No. 157, | " | " | 305½ | 305-50 | 1.53 |

upon which assessment a sale was made by J. B. Evans, treasurer, to Elijah Heath, in June, 1832, and on the 10th September, 1832, a deed was acknowledged by said treasurer, to E. Heath, for tract No. 157.

From the treasurer's sale list it appeared that the tract was sold for $50. A bond for surplus was not given at the time of the acknowledgment of the deed, but one was given dated 7th February, 1833.

On 29th December, 1834, Elijah Heath and wife conveyed 150 acres of this tract to Jacob Moore, by deed of that date, and on the 6th day of October, they conveyed 50 acres more to Ninean Cooper. On the 6th September, 1846, E. Heath sold 100 acres, the residue of the tract, to James Wilson, by articles of agreement. It also appeared in evidence, that Elijah Heath, and those claiming under him, paid the taxes from 1834 up to 1843.

James Wilson took possession of the land in 1846 or 1847, and when this ejectment was brought in 1851, considerable improvements had been made on the land.

To avoid the sale by the treasurer for the taxes of 1830 and 1831, the plaintiffs proved that their testator wrote to Stewart Steel, in 1830, to pay the taxes on *this tract* of land, with others in Jefferson county; that the latter paid the taxes for the years 1828 and 1829; that, in May, 1832, he wrote to Jared B. Evans, then treasurer of the county, relative to the taxes on the lands of Mr. Burd. The letter was not exhibited at the trial, but the treasurer, on May 14, 1832, wrote to him: "I received yours, and in reply I have to say the taxes on the lands of Edward Burd are settled for the years 1830 and 1831."

A letter from J. M. Stedman to Mr. Steel was produced. It was dated on July 31, 1834, and informed him that the lands were sold in 1832, and bought by E. Heath. It further appeared that in or about 1842, Burd requested suit to be brought for the land, but no ejectment was brought till 1851. Stewart Steel testified that in 1830 he paid the taxes for 1828-9; that he did not remember of giving the names of the tracts in his letter to Evans; he supposed he described them as they were described to him by Mr.

Burd. He said that he advised Burd of the sale, but he did not know when—he knew the time for redemption had expired.

J. B. Evans, the former treasurer, was examined. He said he recollected of getting a letter from Mr. Steel in reference to the Burd lands. There were lands in the county in name of Edward Burd, and from the tenor of his answer, he should think the inquiry was made as to the Edward Burd lands in general terms; but it might be otherwise. The taxes were paid on the "Edward Burd lands" before the date of his letter. That he knew of no other lands belonging to a person by the name of Edward Burd. That he made search for the letter, and thought it was destroyed. He further said it might be possible that the letter referred to the tracts by their number.

On the trial, points as follows were submitted on the part of the *plaintiffs:* 1. That the treasurer's sale is invalid, no surplus bond having been filed until after the expiration of two years from the sale. 2. That if the jury rely upon the testimony of Stewart Steel that he had charge of the lands, and wrote to the treasurer, in reference to the taxes of the lands referred to in Mr. Burd's letter, and received the answer read in evidence, the legal title would not be divested by the treasurer's sale. 3. That if the testimony of Stewart Steel is relied upon, the defendants cannot avail themselves of the *five* years' limitation.

On the part of the defendants, the Court was asked to charge that a period of more than five years having elapsed between the time when the land in dispute was sold and a deed delivered by the treasurer to Elijah Heath, before the present action was brought, the action cannot be sustained.

The Court instructed the jury to return a verdict for the defendants; and on 16th February, 1853, a verdict for defendants was rendered.

It was assigned for error, that the Court erred in taking the case from the jury.

*Lucas*, with whom was *Purviance*, for plaintiffs in error.—It was contended that the treasurer having informed Burd's agent that the taxes were paid, placed the land in the condition in which it would have been if the taxes *had been paid;* that in that event the lands would not have been liable to sale; that the treasurer, by omitting to perform his duties, could not occasion a forfeiture of the land: 5 *W. & Ser.* 540, Baird v. Cahoon; 4 *Id.* 146; 3 *Pa. Rep.* 112. It was said that the testimony on this point should have been referred to the jury.

It was further said that the omission of the bond for the surplus, was not considered fatal in Ash v. Ashton, 3 *W. & Ser.* 516, be-

cause the owner had notice of the sale, and neglected to redeem or bring ejectment within the time designated.

*White*, with whom was *Coffey*, for defendants in error.—It was said that the evidence showed a sale of the lands in 1832 for taxes; that the testator knew of that sale as early as 1834, and that no suit was brought till 1851, during which time the taxes were paid by the treasurer's vendee, and those claiming from him. It was contended that the plaintiffs were bound by the limitation provided in the 3d section of the Act of 3d April, 1804, which provides that no action for recovery of lands sold for taxes shall lie, unless the same be brought within five years after *the sale*. That in cases not embraced in the limitation of *two* years, provided by the Act of 1815, relating to sales of unseated lands, the limitation of *five* years begins to run *from the sale :* 3 *W. & Ser.* 510, Ash *v.* Ashton; 4 *W. & Ser.* 164, McCall *v.* Himebaugh; 5 *W. & Ser.* 465, Bayard *v.* Inglis; 9 *Barr* 71, Robb *v.* Bowen.

The testimony of Steel could not avoid the sale. In the case of Baird *v.* Cahoon, 5 *W. & Ser.* 540, the agent of the owner went to the treasurer, stated the names of the warrantees, and paid all taxes charged against the lands, so that the owner had no reason to suspect that any taxes were unpaid. In the present case no money was paid. It was further said that the inquiry may have been in *general terms ;* not specifying the tract in dispute. In the case of Baird *v.* Cahoon, the limitation of five years was not alleged in aid of the tax title. Statutes of limitation are made for those who, without the statute, may have no protection : 2 *Pa. Rep.* 504, Huston, J., in Bradford *v.* Dornseif.

As to the bond for surplus, was cited Bayard *v.* Inglis, 5 *W. & Ser.* 465.

The opinion of the Court was delivered by

Lewis, J.—This was an ejectment brought by the original owner of a tract of unseated land; and the defence is founded upon a sale of the tract for non-payment of taxes. The sale took place in June, 1832, and the treasurer's deed was executed in pursuance thereof on the 10th September, 1832. The ejectment was brought on the 22d May, 1851, nearly 19 years after the sale. There was evidence of conveyances of different parts of the tract to different purchasers under the tax title; and also evidence of the payment of taxes by those claiming that title from 1834 to 1843. But there was no evidence that the purchaser, or those claiming under him, had held actual possession of the tract for the period of five years before the ejectment was brought. It was shown that the title was out of the Commonwealth, and that the land was unseated at the time of the assessment and sale. It was

1853.] OF PENNSYLVANIA. 223

[Burd's Executors *v.* Patterson.]

in evidence that the tax was duly assessed, and it is not pretended that it was paid before the sale, or that the redemption money was tendered within two years thereafter. But it is contended that the sale may be avoided because the agent of Mr. Burd wrote to the treasurer of Jefferson county to ascertain what taxes were due upon the lands of Edward Burd, and was informed by the treasurer, on the 14th May, 1832, that "the taxes on the lands of Edward Burd are settled for the years 1830 and 1831." The letter of the agent to the treasurer is not produced, and there is some doubt whether it described the particular tracts in relation to which the inquiry was made, or merely inquired about "the lands of Edward Burd in general terms." The treasurer thinks that the inquiry was made in the latter form, and as the taxes were paid on the "Edward Burd lands" (thus carried out in the books), and he knew of no other lands belonging to Edward Burd, he answered as already mentioned, that the taxes were paid. It is a general principle of law, founded on substantial justice, that where a loss must fall upon one of several individuals, it must be borne by him whose fault occasioned it. It was certainly no part of the duty of the purchaser to attend to the payment of Mr. Burd's taxes. That gentleman undoubtedly had the best knowledge of the extent of his own property and of the amount of taxes due upon it. He knew that he was in duty bound to pay his share of the public burthens, and that he had not performed that duty. If he neglected the payment in consequence of erroneous information derived from the treasurer, it is more just that he should seek his remedy against the latter, than that he should attempt to throw the loss upon the purchaser who paid his money on the faith of a public sale made by the officer of the law. This would seem to be in accordance with the justice of the case if the validity of the sale was still open to inquiry. But five years (indeed nearly four times that number of years) have elapsed since the sale; and the question is again presented whether since the Act of 21st March, 1824, the limitation begins to run from *the sale*, or from the time when *possession was taken* in pursuance of it.

That question has been repeatedly decided, and it is certainly time that it should be put at rest. The Act of 3d April, 1804, which created this limitation, distinctly and expressly fixed upon *the sale* as the time when the limitation began to run. The decision in Parish *v.* Stevens, 3 *Ser. & R.* 298, was in accordance with the express terms of the statute. But afterwards, on account of the supposed difficulty in bringing an ejectment against a purchaser who had not taken possession, the Court decided that the limitation did not commence running until the purchaser *took possession*: Waln *v.* Shearman, 8 *Ser. & R.* 357; Cranmer *v.* Hall, 4 *W. & Ser.* 36. In consequence of the decision in Waln *v.* Shear-

man, the Act of 24th March, 1824, removed the difficulty supposed to exist in bringing ejectments against purchasers of tax titles who had not taken possession, and prescribed the manner in which such ejectments might be brought. "*Ratio est anima legis,*" is a sound maxim of the law; and there can be no more appropriate occasion for its influence than when it restores the operation of a statute according to its plainly expressed meaning, after it had been defeated or suspended for a reason which no longer exists, and which the legislative power itself had taken care to remove, in order that the statute might not be obstructed thereafter. The provision in the Act of 1824, that any person now having a right of entry, because no actual possession had been taken of the land so sold, "might bring his action within two years" from the date of that Act, is an affirmative pregnant with a plain negation of the right to bring such actions after two years. The legislature did not assume the power to reverse the decision in Waln *v.* Shearman, nor to enact a law to operate retrospectively; but they determined that all sales theretofore made, which were subject to the *indefinite* limitation established by that decision, should be brought under the definite limitation of the Act of 1824. As this limitation was prospective, they had the power to enact it, and in doing so they plainly abolished the principle of Waln *v.* Shearman in regard to all rights of action *then existing*. To suppose that they intended to *continue* the principle for cases thereafter to arise, after the reason for it was abolished, and after the legislative condemnation which it had received, is to accuse them of a manifest absurdity. There was no reason for abolishing the principle in respect to rights of action *then existing*, which did not apply with still greater force against its continuance in cases *thereafter to arise*. The reason for its existence having been abrogated, and the plain letter of the Act of 1804 remaining in full force, they had a right to expect from the judiciary an intelligent and faithful exposition of the statute, according to its plain meaning. In Ash *v.* Ashton, 3 *W. & Ser.* 514, Mr. Justice KENNEDY, in speaking of sales since the Act of 1824, declares that the limitation under the Act of 1804 commences from *the sale*. In Bradford *v.* Dornseif, 2 *Pa. Rep.* 503, Mr. Justice HUSTON tells us that the Act of 1804 limits the action to five years after *the sale*, and says that "nothing can be more plain and positive; the law must be enforced or repealed by the Court, it cannot be mistaken or misunderstood." In Robb *v.* Bowen, 9 *Barr* 71, the point was distinctly decided by this Court that since the Act of 1824 the limitation commences from *the sale*, and not from the time when possession is taken by the purchaser. In Sheik *v.* McIlroy *et al.*, 8 *Harris*, the same principle was again decided.

It may be supposed that the cases of Bigler *v.* Karns, 4 *W. &*

[Burd's Executors v. Patterson.]

*Ser.* 137, and Shearer *v.* Woodburn, 10 *Barr* 512, are adverse in some respects to the principles of Robb *v.* Bowen and Sheik *v.* McIlroy. But this is a mistake. It is essential to the validity of every tax sale that the title must be shown to be out of the Commonwealth. If this be not shown it is not subject to assessment and sale, and there is a total want of jurisdiction over it. In Bigler *v.* Karns it was held that the lapse of five years with possession taken of part of the tract, not the part in dispute, under a deed for that part from the purchaser at treasurer's sale, did not dispense with proof *that the title was out of the Commonwealth.* This was all that was decided in that case, which in any manner touches the question before us, and we fully subscribe to the decision. In Shearer *v.* Woodburn no question was raised under the limitation of the Act of 1804, or under that of the Act of 1824. The tax title was rejected *because no taxes were paid or claim made under it for* 35 *years, and the opposing title had paid taxes for* 25 *years.* There is nothing in that decision which conflicts with the principle of Robb *v.* Bowen and Sheik *v.* McIlroy. That principle is therefore reaffirmed.

It is objected to the tax sale that no surplus bond was given; but it appears that one was given on the 7th February, 1833, which was before the expiration of two years. But under the view taken in Ash *v.* Ashton, 3 *W. & Ser.* 516, this irregularity, as well as all others, is cured by the statute of limitation.

In conclusion, we are of opinion that the plaintiff in error was barred by omitting to bring his ejectment within five years after the delivery of the treasurer's deed to the purchaser; and that there are no circumstances in the case which deprive the defendant of the benefit of this statute of limitation.

Judgment affirmed.